[Crim. No. 1600. Second Appellate District, Division One.—June 4, 1928.]

THE PEOPLE, Respondent, v. JOHN LANDO, Appellant.

W. T. Kendrick, Jr., for Appellant.

U. S. Webb, Attorney-General, John L. Flynn, Deputy Attorney-General, and John D. Richer for Respondent.

CONREY, P. J.—Count one of the information charged that on the eleventh day of June, 1922, in the county of Los Angeles, defendant did wilfully, etc., kill and murder one Edward Mejia. Count two charges that at the same

time and place the defendant did wilfully, etc., kill and murder one Jesus Mejia. On the first count the jury found the defendant guilty of murder of the second degree. On the second count the jury found the defendant guilty of murder of the first degree and fixed the penalty at imprisonment in the state prison for life.

It is an admitted fact that defendant Lando (at that time known as Tony Tuzzolino) killed the Mejia brothers. At the trial his only defense was that the killing was done in self-defense. The circumstances of the killing, as shown by the prosecution, are clearly described in the testimony of Juan Saragosa, an eye-witness. The two Mejia brothers were sitting together next to the wall in a pool-hall, where games were being played. The defendant came in through the front door and made a movement with the head, indicating or pointing toward the back yard. "He did like this to the boys making a movement with his head." The defendant walked out through the back door and the Mejia boys followed him, Edward walking behind Jesus. Just as Jesus was opening the door to go outside, the defendant fired several shots and fatally wounded both of said brothers. Edward died almost immediately and Jesus the next day. This witness, like some of the others who were present on that occasion, declared that he did not see any weapon in the hands of either of the Mejia brothers. There was introduced in evidence a dying declaration made by Jesus Mejia concerning the facts and circumstances of the tragedy. According to that statement the defendant and his two victims, together with others, had been playing in a crap game in the back yard, in which game Jesus lost $10. Then (in the language of the interpreter): "He says he lost his $10 and Tony Tuzzolino told him to get some more money so he just told him that he hadn't got no more and walked right into the pool hall and he says later Tony come in the pool hall and motioned to him if he would come out in the back yard and he says he and Edward got off the bench where we were sitting and follow him and before we get in the door into the back yard he started shooting. Q. Who started? A. Tony started shooting at Jesus and Edward."

According to the testimony of the defendant the Mejia brothers, after losing some money in the crap game, had

a dispute with defendant about the money. In substance, defendant's statement was that one of the Mejias drew back with his hand in his side pocket, but the brother drew him away, "telling him, let's go home, so finally he went with him"; that later the defendant went into the pool-hall and while he was there the Mejia brothers came in and asked defendant if he wanted to fight; "I started to walk out towards the back and when I got the screen door open this biggest boy he was right on my back or in back of me, so I turned around, I thought he was going to fight. . . . So I turned around and I was ready to fight him, but he comes out with a knife out of his pocket, or he had it in his hand, he already had the knife in his hand; when I seen that I pulled out my gun and told him, I says, drop that knife. . . . So he raises the knife up like that to throw it at me and I shot him; as soon as I fired the first shot he came after me, still kept coming, I don't know just exactly where I hit him, he kept coming after me, and I shot him again, and that is when he fell down, and in the meantime the other brother come out, he was right at the door with his hand in his pocket like that, and he was trying to get it out, I don't know what he had, I didn't see it, and I shot him too." According to some of the defendant's witnesses, one of the Mejias had a knife in his hand at the time of the preliminary altercation which took place in the yard at the time of the crap game. According to one of the defendant's witnesses, who testified as an eye-witness of the later transaction, the Mejia boys "got up and made motion and grabbing of the chest and pushed him backwards. . . They were pushing him backwards and then when he got in the back yard there, then he shot. . . . One of them grabbed him by the chest and had knife in his pocket. Q. Could you see any knife at all? A. There was a lot of people there and I couldn't see." On motion, the statement that there was "knife in his pocket" was stricken out. "Q. You saw the Mexican have his hand in his pocket? A. Yes, I saw." According to this same witness, these two Mexicans, in following defendant out the back door, were five or six feet behind defendant, and the defendant was walking backwards. It will be noted that defendant himself did not agree with some of the statements made by this witness.

From the foregoing statement it is clear that the evidence is abundantly sufficient to justify the verdict, and that this is equally true as applied to both counts.

■ In addition to the claim that the evidence is insufficient to support a verdict of murder, the points on appeal are, first, that the court erred in overruling defendant's objection to a question asked by the district attorney on cross-examination of the defendant, inquiring whether the defendant, during the year 1924, in the superior court of Los Angeles County, "pleaded guilty to receiving stolen property, a felony." The defendant answered in the affirmative. But it further appeared in the testimony that in punishment of said offense the defendant had been sentenced only to serve six months' imprisonment in the county jail. Under those circumstances the offense to which the testimony referred became and should have been deemed "a misdemeanor for all purposes." (Pen. Code, sec. 17; *Doble* v. *Superior Court,* 197 Cal. 556, 557 [241 Pac. 852].) As the record was easily available to the district attorney, it was distinctly bad practice for him to attempt to create a prejudice against the defendant by compelling him to admit such former conviction. A witness may not be impeached by evidence of particular wrongful acts, except that it may be shown that he has been convicted of a felony. (Code Civ. Proc., sec. 2051.) Counsel for defendant, in objecting to this question, included as a ground of objection that the record itself would show that the witness was not convicted of a felony. We think that when such statement is made in connection with an objection of this kind, and when the record is easily obtainable without delaying the trial, the court should insist upon an inspection of such record, and if it does show that the conviction was in law only a conviction of misdemeanor, further inquiry along that line should be peremptorily shut off. Subject to this limitation, however, we are of the opinion that the court did not err in overruling the objection. Many cases occur wherein a witness has been convicted of a felony and there is no available means of proving the fact, except by calling for his own admission of the truth.

■ Appellant's next point is that the court erred in sustaining an objection to the question, "Why were you carrying the gun?" This occurred while the defendant was

testifying, on direct examination, as a witness in his own behalf. "Q. When you had this first argument with them in the crap game, did you have this gun on you then? A. Yes, sir. Q. How long had you had this gun? A. Why, I used to carry it around with me at all times. Q. Why were you carrying the gun?" The district attorney objected that the question was immaterial, and called for a conclusion of the witness. Objection sustained. The prosecution had not introduced any testimony tending to prove that defendant had procured the gun for the purpose of shooting the Mejia brothers or either of them. Defendant's testimony that he carried the gun "at all times," that is, habitually, was uncontradicted. In that state of the evidence the question "Why were you carrying the gun?" was immaterial, and the court did not err in sustaining the objection.

We find no merit in appellant's contention that the evidence necessarily reduced the offense to manslaughter.

We are satisfied that the record is free from any prejudicial error, and that in the verdict and judgment there is no miscarriage of justice.

The judgments and order are affirmed.

Houser, J., and York, J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on August 2, 1928.

All the Justices present concurred.